IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § | |
| | § | Civil Action No. 3:07-CV-1643-D |
| VS. | § § | |
| PHILLIP W. OFFILL, JR., et al., | § § | |
| Defendants. | § § | |

MEMORANDUM OPINION
AND ORDER

In this enforcement action brought by plaintiff Securities and Exchange Commission

("SEC") against several defendants and relief defendants arising from the offering and selling

of unregistered securities by six companies, the court concludes that the SEC is entitled to

summary judgment establishing liability and that the cross-motion for summary judgment

of two defendants and two relief defendants lacks merits. The court therefore grants the

SEC's motion as to liability and denies defendants' cross-motion. The court will separately

issue a decision addressing the relief to which the SEC is entitled.

I

The SEC brings this enforcement against the following eleven defendants: Phillip W.

Offill, Jr. ("Offill"), David B. Stocker ("Stocker"),[1] Curtis-Case, Inc. ("Curtis-Case"),[2] Shane

---

[1] The court entered a final consent judgment as to Stocker on May 7, 2009.

[2] The court entered a final consent judgment as to Curtis-Case on May 7, 2009.

A. Mullholand ("Mullholand"), Ryan M. Reynolds ("Reynolds"), Timothy T. Page ("Page"), Steven P. Fischer ("Fischer"), RSMR Capital Group, Inc. ("RSMR"), Dissemination Services, LLC ("Dissemination"), Page Properties, LP ("Page Properties"), and ATN Enterprises, LLC ("ATN"), and three relief defendants Timothy B. Barham ("Barham"), Ballad Enterprises, Inc. ("Ballad"), and Bellatalia, LP ("Bellatalia"). The SEC alleges violations of § 5(a) and (c) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77e (a) and (c), and of § 15(a)(1) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78o(a)(1). The alleged violations involve the securities offerings of six companies as they transitioned from private to publicly traded companies.

The first two offerings at issue involved American Television and Film Company, Inc. ("ATFT") and Vanquish Productions, Inc. ("Vanquish").[3] The owners of ATFT and Vanquish sought to raise capital for their companies by taking them public. Mullholand and Reynolds, using Mullholand's company, Dissemination,[4] agreed to help take the companies

---

[3]Because the SEC and defendants Fischer and ATN and relief defendants Barham and Ballad "have filed motions for summary judgment, the court will principally recount only the evidence that is undisputed." *AMX Corp. v. Pilote Films*, 2007 WL 1695120, at *1 n. 2 (N.D. Tex. June 5, 2007) (Fitzwater, J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n. 2 (N.D. Tex. 2006) (Fitzwater, J.)), *modified in part on other grounds*, 2007 WL 2254943 (N.D. Tex. Aug. 7, 2007) (Fitzwater, J.). "If it is necessary to set out evidence that is contested, the court will do so favorably to the party who is the summary judgment nonmovant in the context of that evidence." *Id.* "In this way it will comply with the standard that governs resolution of summary judgment motions." *Id.*

[4]The profits from Dissemination were split evenly between Mullholand and Reynolds by checks paid to their private companies, Bach Investments, Inc. ("Bach") and Veruschka LLC ("Veruschka"), which is now relief defendant Bellatalia.

public and raise up to $1 million for them by selling their newly-issued stock. Mullholand and Reynolds, through their companies, Dissemination and RSMR,[5] sold the companies' stock to raise capital and to pay for market awareness work conducted on behalf of the companies. They kept the remaining proceeds as profit. Stocker performed the legal work for the transactions. The companies also issued stock to Dissemination and RSMR as payment for their services. The stock was deposited into various brokerage accounts, from which many of the shares were then sold shortly thereafter.[6] During the initial days of trading, Reynolds bought some of the stock and encouraged friends and family to do the same.

The next two offerings at issue involved Ecogate, Inc. ("Ecogate") and Media International Concepts, Inc. ("Media International"). Page, through Lion Capital Holdings, Inc.[7] ("Lion Capital"), agreed to help take the two companies public. Page introduced Stocker to the companies to conduct the necessary legal work. Page paid the companies $42,500 and $25,000, respectively, in return for millions of their newly issued shares. Mullholand and Reynolds conducted a market awareness campaign for Ecogate, and after

---

[5]RSMR is a holding company that Mullholand and Reynolds formed to make investments. Mullholand and Reynolds each owned 50% of RSMR.

[6]Both Mullholand and Reynolds had trading authority over an RSMR brokerage account at Bishop Rosen and over Dissemination brokerage accounts at Bishop Rosen and at four other brokerage firms. Mullholand primarily controlled these accounts, but Reynolds occasionally directed trading from the accounts when Mullholand was away.

[7]Page owned 76% of Lion Capital.

being introduced to Fischer by Barham,[8] hired Fischer's company, ATN,[9] to conduct market awareness for Media International. Ecogate issued shares to Page, Dissemination, and TGWSS Ventures, LLC, a Texas company managed by Offill.[10] Offill transferred his shares to Stocker's company, Curtis-Case. Page, Dissemination, and Curtis-Case then sold their Ecogate shares to the market. Media International issued shares to Page, Dissemination, and Odyssey Contracting, a Texas company created by Offill. Odyssey Contracting also transferred its shares to Curtis-Case. After Dissemination paid ATN in the form of Media International stock, ATN sold its Media International shares to the public.

The fifth offering at issue involved Auction Mills, Inc. ("Auction Mills"). Mullholand, Reynolds, Dissemination, and RSMR raised money for Auction Mills by selling its shares after taking it public. Mullholand once again hired Fischer to conduct market awareness for Auction Mills, for which Fischer was paid in Auction Mills stock. Auction Mills issued shares to Dissemination, RSMR, and Crimson City Holdings, Inc. ("Crimson City"), a company created by Offill. Crimson City transferred its shares to Curtis-Case. Dissemination then issued part of its Auction Mills shares to ATN as payment for Fischer's

---

[8]Barham, acting through his company Ballad, was a business opportunity broker. He introduced parties who might be interested in working together, and he received 10% of the gross proceeds from any deals resulting from his introduction. Barham acted as a business opportunity broker for Fischer from 2003 to 2005. Fischer paid Barham from the proceeds of the sale of the stock Fischer acquired as payment for his market awareness work.

[9]Fischer owned ATN, and often hired subvendors to conduct portions of the market awareness campaigns.

[10]Offill was a private securities attorney who assisted Stocker by creating entities that would initially invest in securities offerings.

work.  ATN, RSMR, Dissemination, and Curtis-Case sold their Auction Mills shares to the public through their respective brokerage accounts.

The sixth offering at issue involved Custom Design Compressor Systems, Inc. ("CDCS").  Mullholand, Reynolds, RSMR, and Dissemination raised money for CDCS by assisting it in going public.  Fischer conducted a market awareness campaign for CDCS. CDCS issued its shares to Classical Movement Holdings, Inc. ("Classical Movement"), another entity controlled by Offill.  Classical Movement then transferred CDCS shares to Curtis-Case, ATN, Dissemination, RSMR, and Stocker.  RSMR and ATN sold their shares through their respective brokerage accounts.  ATN paid Ballad from money ATN made selling CDCS stock as payment for Barham's introducing Fischer to Mullholand and Reynolds.

The SEC moves for summary judgment against all defendants and relief defendants. Fischer, ATN, Barham, and Ballad cross-move for summary judgment.[11]

---

[11]Reynolds and Barham filed on May 24, 2011 a motion to stay proceedings, or, alternatively, to deny the SEC's motion for summary judgment without prejudice. Reynolds and Barham were indicted for conspiracy to commit securities, mail, and wire fraud in the Southern District of Florida one week before the SEC filed its motion for summary judgment. They argue that because both civil and criminal actions that relate to the violation of securities law are currently pending against them, the court should stay this suit for 90 days or deny without prejudice the summary judgment motion.  The court denies the motion.
   There is no overlap between the instant civil case and the criminal case in the Southern District of Florida.  The indictment against Reynolds and Barham charges them with securities, wire, and mail fraud in the course of selling securities of CO2 Tech, Inc. in 2007.  The instant civil action involves the sale of the securities of six different companies in 2004.  Moreover, the court can take judicial notice that Reynolds and Barham entered guilty pleas in the criminal case on January 13, 2012.  *See United States v. Reynolds*, No. 1:11-cr-20131-JEM-9 (S.D. Fa.); *United States v. Barham*, No. 1:11-cr-20131-JEM-7 (S.D.

II

Because the SEC will have the burden of proof at trial on its claims against the defendants and relief defendants, to obtain summary judgment it "must establish 'beyond peradventure all of the essential elements of the claim[s.]'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)).  This means that the SEC must demonstrate that there are no genuine and material fact disputes and that it is entitled to summary judgment as a matter of law.  *See, e.g., Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003).  "The court has noted that the 'beyond peradventure' standard is 'heavy.'" *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923-24 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

Defendants Fischer and ATN, and relief defendants Barham and Ballad, cross-move for summary judgment.  When a party moves for summary judgment on a claim for which the opposing party will bear the burden of proof at trial, the moving party can meet his or its summary judgment obligation by pointing the court to the absence of admissible evidence

---

Fla.).  Their concerns about prejudice to the criminal case and of Barham's forfeiting his Fifth Amendment rights in the criminal case have therefore fallen away.

Additionally, they have failed to demonstrate prejudice on the basis of Reynolds' incarceration.  They have failed to establish that restriction on attorney access to Reynolds has materially impeded their ability to respond to the SEC's motion.

Therefore, the court concludes that there are no special circumstances that warrant staying the proceedings or denying the SEC's summary judgment motion without prejudice.  Reynolds and Barham's motion is therefore denied.

to support the opposing party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party does so, the opposing party must go beyond its pleadings and designate specific facts showing there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The opposing party's failure to produce proof as to any essential element of a claim renders all other facts immaterial. *See Trugreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory if the opposing party fails to meet this burden. *Little*, 37 F.3d at 1076.

## III

The SEC seeks summary judgment on its claims that all defendants violated § 5 of the Securities Act by offering and selling unregistered securities, in violation of 15 U.S.C. § 77e(a) and (c).[12]

## A

Liability for violations of § 5 extends to all individuals who have "engaged in steps necessary to the distribution of [unregistered] security issues." *SEC v. Chinese Consol. Benev. Ass'n*, 120 F.2d 738, 741 (2d Cir. 1941); *see also SEC v. Murphy*, 626 F.2d 633, 650-51 (9th Cir. 1980). "The necessary participant test . . . essentially asks whether, but for

---

[12]Because defendants Stocker and Curtis-Case consented to the entry of final judgments against them, the court does not address the SEC's § 5 claim against them.

- 7 -

the defendant's participation, the sale transaction would not have taken place—in other words, whether the defendants' acts were a substantial factor in the sales transaction." *SEC v. Universal Express, Inc.*, 475 F.Supp.2d 412, 422 (S.D.N.Y. 2007) (quoting *Murphy*, 626 F.2d at 651-52 (internal quotation marks omitted)). Section 5 violations are strict liability offenses that do not require proof of scienter. *Aaron v. SEC*, 446 U.S. 680, 714 n.5 (1980); *see also Swenson v. Engelstad*, 626 F.2d 421, 424 (5th Cir. 1980) ("The Securities Act of 1933 imposes strict liability on offerors and sellers of unregistered securities . . . regardless of . . . any degree of fault, negligent or intentional, on the seller's part.") (citation omitted); *SEC v. Calvo*, 378 F.3d 1211, 1215 (11th Cir. 2004) ("Scienter is not a consideration.").

"To make out a [*prima facie*] case of a violation of [15 U.S.C. § 77e(a) and (c)], plaintiff bears the burden of proving 1) an offer or sale of a security; 2) the security was not registered pursuant to Section 5 of the 1933 Act, 15 U.S.C. § 77e, and 3) the sellers used the United States mail or facilities of interstate commerce in connection with the offer or sale." *Dennis v. Gen. Imaging, Inc.*, 918 F.2d 496, 503-04 (5th Cir. 1990) (citing *Swenson*, 626 F.2d at 425). Once the SEC establishes a prima facie case, the burden shifts to the defendant to prove that he qualifies for a registration exemption. *SEC v. Cont'l Tobacco Co. of S. C.*, 463 F.2d 137, 156 (5th Cir. 1972).

B

The SEC has adduced evidence that establishes that no registration statement was filed for the six securities transactions at issue. It has also shown that the offer or sale of the securities by all defendants except Offill utilized the instrumentalities of interstate commerce

- 8 -

by selling shares of Texas companies through brokerage accounts located in New York and California. Offill utilized the instrumentalities of interstate commerce by using a transfer agent in Arizona.[13] Moreover, defendants Mullholand, Fischer, Dissemination, and ATN, and relief defendants Barham and Ballad concede the final element of the SEC's prima facie case: that there was an offer or sale of a security.[14]

Defendant Page denies, however, that he offered or sold a security.[15] In support, he contends that he did not work with Offill, Mullholand, or Reynolds on the Ecogate or Media International offerings. The standard for showing the offer or sale of a security, however, is "whether the defendants' acts were a substantial factor in the sales transaction." *Universal Express*, 475 F.Supp.2d at 422 (internal quotation marks omitted). Thus whether Page

---

[13]Defendants Offill, Reynolds, RSMR, and Page Properties, and relief defendant Bellatalia did not respond to the SEC's motion. "Although [defendant's] failure to respond does not permit entry of a 'default' summary judgment, the court is permitted to accept the movant's evidence as undisputed." *Tutton v. Garland Indep. Sch. Dist.*, 733 F. Supp. 1113, 1117 (N.D. Tex. 1990) (Fitzwater, J.) (citing *Eversley v. Mbank Dall.*, 843 F.2d 172, 174 (5th Cir. 1988)); Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion[.]"). The undisputed facts demonstrate that Offill, Reynolds, RSMR, and Page Properties were involved in the offer or sale of a security.

[14]These parties do, however, dispute whether they qualify for an exemption from the registration requirement. The court discusses the registration exemption *infra* at § III(C).

[15]Although Page does not explicitly concede the second and third elements of a prima facie case, he does not attempt to raise a genuine issue of material fact as to the SEC's evidence establishing them. The SEC has established that there was no registration statement filed for the Ecogate or Media International Transactions, and that Page used the facilities of interstate commerce in connection with the sale because he lived in Texas while using brokerage accounts in California and New York.

worked with Offill, Mullholand, and Reynolds does not resolve the question whether he was a necessary participant in the offering or sale of unregistered securities to the public. The SEC's unrebutted evidence shows that Page received shares of both Ecogate and Media International as compensation for assisting in taking the companies public, and that he purchased additional shares directly from these companies. He then began selling the shares to the public almost immediately thereafter.[16] Thus, by Page's admission, he sold a security.

---

[16]Defendants Mullholand, Page, and Dissemination object to the admissibility of the declaration of Daniel M. Konosky ("Konosky") on the grounds that it was not made on personal knowledge, lacks foundation, is hearsay, and is based on documents that are not authenticated. The court concludes that the Konosky declaration is admissible.

Konosky's declaration complies with Rule 56(c)(4) because it demonstrates his personal knowledge of the documents on which he relies. The declaration lays the proper foundation for the summaries of the records Konosky reviewed because he testifies about how the summaries were prepared, and the underlying documents are available to defendants for inspection. *See, e.g., Love v. Nat'l Med. Enters.*, 230 F.3d 765, 776 (5th Cir. 2000); *EAC Credit Corp. v. King*, 507 F.2d 1232, 1236 (5th Cir. 1975) (holding that summary evidence was admissible based on testimony of the summary's preparation and the availability of the underlying documents for inspection). The documents that are summarized fall within the Fed. R. Evid. 803(6) hearsay exception because John B. Smith, Esquire ("Smith"), an attorney employed by the SEC, served as a qualified witness for purposes of Rule 803(6). "[A] government agent can serve as a 'qualified witness' for the purposes of Rule 803(6)" if the witness is "able to explain the record keeping system and vouch that the requirements of the rule ha[ve] been met." *U.S. Commodity Futures Trading Comm'n v. Dizona*, 594 F.3d 408, 416 n.6 (5th Cir. 2010). Smith testified that, pursuant to regulations, the records relied on must be maintained in the regular course of business. Such testimony by a qualified witness is sufficient for the Rule 803(6) hearsay exception to apply. *See id.* (citing *United States v. Veyita-Bravo*, 603 F.2d 1187, 1191-92 (5th Cir. 1979) (explaining that Rule 803(6) requirements were met by agent's testimony that records were compiled pursuant to regulations that required that dealer make contemporaneous record of each sale as part of its regular course of business). And the summarized documents have been properly authenticated under Rule 901(b)(1) based on the agent's testimony to their authenticity.

Defendant Page also objects to specific documents from his various brokerage accounts on which the SEC relies, but these documents are admissible for the same reasons.

C

The court now considers whether defendants have raised a genuine issue of material fact regarding whether they were exempted for the registration requirements. Because defendants bear the burden of proof of establishing an exemption, for the SEC to prevail on summary judgment motion, it need only point to a lack of evidence that would enable a reasonable jury to find that defendants qualify for an exemption. If it does, defendants must introduce evidence that creates a genuine issue of material fact. *See Celotex*, 477 U.S. at 324.

1

15 U.S.C. § 77d(1) provides that the registration requirements of § 77e do not apply to "transactions by any person other than an issuer, underwriter, or dealer." The exemption was designed to exempt "routine trading transactions with respect to securities already issued and not to exempt distributions by issuers or acts of others who engage in steps necessary to such distributions." *SEC v. Holschuh*, 694 F.2d 130, 137-38 (7th Cir. 1982). The parties primarily dispute whether any defendant qualifies as an underwriter. An underwriter is a person

> who has purchased from an issuer with a view to, or offers or sells for an issuer in connection with, the distribution of any security, or participates or has a direct or indirect participation in any such undertaking, or participates or has a participation in the direct or indirect underwriting of any such undertaking[.]

15 U.S.C. § 77b(a)(11). Section 77d(1) exempts "transactions," not individuals. "Transaction" is broadly defined as the entire process of the stock's being dispersed from the issuer until it reaches the investing public. *See SEC v. Kern*, 425 F.3d 143, 152-53 (2d Cir.

2005) (holding that because an underwriter was involved in the 1998 sale of stock, a distinct sale of the stock in 1999 could not qualify for the § 77d(1) exemption because the sales were part of the same "transaction").   "[I]f *any person involved* in a transaction is a statutory underwriter, then *none of the persons involved* may claim exemption under Section 4(1)." *Kern*, 425 F.3d at 152 (emphasis added).

## 2

Several defendants argue that they are not underwriters because their state of mind when they obtained the shares was not with a view to distribute the shares to the public.  In determining whether a person acted as an underwriter, however, the court "does not [have to] incorporate consideration of the actor's subjective understandings."  *Universal Express*, 475 F.Supp.2d at 432-33.  A party is an underwriter if he purchases shares "with a view" to distribute them to the public *or* if he sells shares "for an issuer in connection with[] the distribution of any security."  15 U.S.C. § 77b(a)(11); *see SEC v. Lybrand*, 200 F.Supp.2d 384, 393 (S.D.N.Y. 2002) ("[D]efendants ignore the fact that Section 2(11) is written in the disjunctive . . . .  Their mental state at the time they acquired the . . . shares is therefore not dispositive."), *aff'd on other grounds sub. nom SEC v. Kern*, 425 F.3d 143 (2d Cir. 2005); *Universal Express*, 475 F.Supp.2d at 432-33 (finding that defendant was an underwriter regardless of whether he "may have been unaware that [his] acts constituted participation in a distribution and may have intended otherwise"); *SEC v. Olins*, 2010 WL 900518, at *3 (N.D. Cal. Mar. 12, 2010) (order denying reconsideration) ("[I]rrespective of whether a seller of an unregistered security purchased with a view to distribution, such seller may be held

liable under the Act as an underwriter where the sale is made for an issuer in connection with[] the distribution of [the] security." (internal quotation marks omitted)).   "The term distribution refers to the entire process in a public offering through which a block of securities is dispersed and ultimately comes to rest in the hand of the investing public." *Geiger v. SEC*, 363 F.3d 481, 487 (D.C. Cir. 2004) (internal quotation marks omitted); *see also Ackerberg v. Johnson*, 892 F.2d 1328, 1336 (8th Cir. 1989) ("Distribution . . . is generally considered synonymous with a public offering.").

Page specifically argues that there is an issue of material fact regarding whether he took the shares of Ecogate and Media International with a view to distribution; he maintains that he only sold the shares out of necessity due to a change in his personal financial circumstances.  The law is clear, however, that an individual can be an underwriter merely by taking part in the transfer of the security from the issuer to the investing public, regardless of his intentions at the time he acquires the stock.  *See, e.g., SEC v. Sierra Brokerage Servs., Inc.*, 608 F.Supp.2d 923, 952 (S.D. Ohio 2009) ("Promoter Defendants were underwriters because they served as the final link in the chain through which unregistered Bluepoint shares were sold to the public." (citing 17 C.F.R. § 230.144 (2009) ("Individual investors who are not professionals in the securities business may also be 'underwriters' . . . if they act as links in a chain of transactions through which securities move from an issuer to the public."))).   "Taking part" in the transfer can include conducting market awareness campaigns leading up to the public offering.  *See, e.g., id.* at n.28 (holding that drafting and disseminating press releases on Internet investment chat boards announcing company's

- 13 -

public offering was sufficient participation in offering for promoter to be considered an underwriter).  Thus the court need not assess defendants' subjective intent when they acquired the companies' stock; they can qualify as underwriters by taking part in the public offering of a security.  *See id.*

3

A reasonable jury could only find that each transaction involved at least one underwriter, making none of the transactions eligible for the § 77d(1) registration exemption. *See Kern*, 425 F.3d at 152 ("[I]f any person involved in a transaction is a statutory underwriter, then none of the persons involved may claim exemption under Section 4(1)."). For the ATFT, Vanquish, Auction Mills, and CDCS transactions, at least Mullholand and Reynolds directly and indirectly participated in the distribution of securities for the four issuers to the public, making them underwriters. *See* 15 U.S.C. § 77b(a)(11).  Mullholand and Reynolds, often through their companies Dissemination and RSMR, acted as underwriters primarily by helping the four companies go public and by raising money for the companies by selling their newly issued shares to the investing public.

For the Ecogate and Media International transactions, at least Page, acting through companies he controlled, was an underwriter.  Page, on behalf of Lion Capital, made an agreement with Ecogate and Media International to help them go public.  Page envisioned that Ecogate could more easily raise money as a public company, partially by selling their stock.  Lion Capital entered into a contract with Ecogate whereby Lion Capital was paid $100,000 to assist Ecogate with corporate restructuring, registration, and "issuance of initial

stock." Page asked Stocker to perform the legal work necessary for the two transactions.

Page hired Mullholand and Reynolds to conduct market awareness for the Ecogate offering, while Mullholand and Reynolds paid Fischer two million Media International shares to do market awareness for the Media International offering. Mullholand, Reynolds, and Page, or their respective companies, all received shares of the companies as payment for their marketing work and taking the companies public. Additionally, Mullholand, Reynolds, and Page, through negotiations with Ecogate and Media International, purchased millions of shares of the companies' stock. They then began selling these shares to the investing public. The undisputed evidence shows that Page directly and indirectly participated in the distribution of Ecogate and Media International securities to the public, making him an underwriter. Because the law is clear that if *a transaction* involves a single underwriter it is not exempt from registration requirements, the court concludes that none of the six transactions is exempt for the registration requirements of 15 U.S.C. § 77e(a) and (c). *See Kern*, 425 F.3d at 152.[17]

---

[17]The court recognizes that some defendants cannot invoke the § 77d(1) exemption because other defendants acted as underwriters, including some defendants who did not respond to the SEC's summary judgment motion and therefore did not attempt to create a genuine issue of material fact on this question. Although it may seem inequitable to deny one defendant's effort to rely on the exemption based on another defendant's failure to respond to the SEC's summary judgment motion, the exemption clearly covers only "transactions." Therefore, to defeat the SEC's motion for summary judgment on this issue, it was necessary for the responding defendant to create a genuine issue of material fact as to the underwriter status of every person involved in a given transaction. No responding defendant attempted to do this.

4

The court briefly addresses and rejects two final arguments that defendants make. First, defendants maintain that lawyers and other professionals assured them that their behavior was legal. Mullholand contends that several lawyers assured him that his transactions were exempt transactions under Texas law, yet he concedes that bad legal advice is not a defense. Similarly, Fischer and ATN relied on J. Alexander's legal and compliance employees when selling their shares of Media International. "[G]ood faith," however, "is not relevant to whether there has been a primary violation of the registration requirements." *Holschuh*, 694 F.2d at 137 n.10. Accordingly, defendants' reliance on the advice of attorneys or brokerage firms does not bear on whether they violated 15 U.S.C. § 77e(a) and (c).

Second, Mullholand and Dissemination argue that Rule 504 of Regulation D grants them a registration exemption for the six transactions at issue. Rule 504 provides a registration exemption for limited offerings and the sale of securities not exceeding $1 million. *See* 17 C.F.R. § 230.504 (2012). The Rule 504 registration exemption, however, only exempts offers and sales of securities by issuers. 17 C.F.R. § 230.501 Preliminary Note 4 (2012) ("These rules are available only to the issuer of the securities and not to any affiliate of that issuer or to any other person for resales of the issuer's securities."); 17 C.F.R. § 230.504(a) ("Offers and sales of securities . . . by an issuer[.]"). A reasonable jury could not find that Mullholand and Dissemination were issuers in any of the six transactions; it

could only find that they received their shares from the issuers.[18]  Therefore, Rule 504 does not provide Mullholand and Dissemination a registration exemption for any of the six transactions at issue.

5

Because defendants have failed to adduce evidence that would enable a reasonable jury to find that defendants qualify for a registration exemption, the court grants the SEC's motion for summary judgment on its claim under § 5 of the Securities Act, alleging violations of 15 U.S.C. § 77e(a) and (c), as to all defendants.  In turn, the cross-motion for summary judgment of defendants Fischer and ATN and relief defendants Barham and Ballad is denied.[19]

IV

The SEC seeks summary judgment on its claim that defendants Reynolds, Mullholand, RSMR, Dissemination, Page, and Page Properties violated § 15(a)(1) of the Exchange Act, 15 U.S.C. § 78o(a)(1), by acting as unregistered brokers and dealers.

---

[18]Mullholand and Dissemination appear to concede in their response brief that they are not issuers.

[19]Defendants originally filed their cross-motion for summary judgment together with their response to the SEC's motion for summary judgment, in violation of N.D. Tex. Civ. R. 56.4.  The cross-motion was filed over one month after the deadline to file motions for summary judgment.  The court not need decide, however, whether defendants' cross-motion should be denied as untimely because it is denying the cross-motion on the merits.

A

Under 15 U.S.C. § 78o(a)(1), it is

> unlawful for any broker or dealer . . . to make use of the mails
> or any means or instrumentality of interstate commerce to effect
> any transactions in, or to induce or attempt to induce the
> purchase or sale of, any security . . . unless such broker or dealer
> is registered.

Scienter is not an element of § 78o(a)(1). *SEC v. Rabinovich & Assocs., LP*, 2008 WL
4937360, at *5 (S.D.N.Y. Nov. 18, 2008); *see also Eastside Church of Christ v. Nat'l Plan,
Inc.*, 391 F.2d 357, 361-62 (5th Cir. 1968) (without making finding of scienter, finding that
defendant violated § 78o(a)(1)). A broker is "any person engaged in the business of effecting
transactions in securities for the account of others," 15 U.S.C. § 78c(a)(4), and a dealer is:

> any person engaged in the business of buying and selling
> securities for such person's own account through a broker or
> otherwise, [but] does not include a person that buys or sells
> securities for [his] own account, either individually or in some
> fiduciary capacity, but not as a part of a regular business.

15 U.S.C. § 78c(a)(5).

Section 15 of the Exchange Act does not define the phrase "engaged in the business."
Various courts have described the conduct that constitutes being "engaged in the business"
of "effecting transactions in,"or "buying and selling," securities. One court has held that
"regularity of participation is the primary indicia of being engaged in the business." *SEC v.
Kenton Capital, Ltd.*, 69 F.Supp.2d 1, 12 (D.D.C. 1998) (internal quotation marks and
citations omitted). Regularity of participation can be shown by "such factors as the dollar
amount of securities sold . . . and the extent to which advertisement and investor solicitation

were used." *Id.* at 12-13 (citations omitted) (discussing factors to consider when determining whether one is engaged in the business of a broker); *see also Mass. Fin. Servs. Inc., v. Sec. Investor Prot. Corp.*, 411 F. Supp. 411, 415 (D. Mass. 1976) ("Both definitions connote a certain regularity of participation in securities transactions at key points in the chain of distribution. Yet, neither definition is all-encompassing. Each excludes, either explicitly or by implication, a variety of functions."), *aff'd*, 545 F.2d 754 (1st Cir. 1976).

The Exchange Act likewise does not define "effecting transactions" for the purposes of being a broker. In determining whether a person "effected transactions," courts consider several factors, such as whether the person (1) solicited investors to purchase securities, (2) was involved in negotiations between the issuer and the investor, and (3) received transaction-related compensation. *SEC v. Earthly Mineral Solutions, Inc.*, 2011 WL 1103349, at *3 (D. Nev. Mar. 23, 2011) (citing *SEC v. Hansen*, 1984 WL 2413 (S.D.N.Y. Apr. 6, 1984)); *see also SEC v. U.S. Pension Trust Corp.*, 2010 WL 3894082, at *21 (S.D. Fla. Sept. 30, 2010) (compiling list of 11 factors courts consider when determining whether someone is a broker).

If an individual is a "finder" rather than a broker or dealer, he is not required to register under the Exchange Act. "The distinction drawn between the broker and the finder or middleman is that the latter bring[s] the parties together with no involvement on [his] part in negotiating the price or any of the other terms of the transaction." *Salamon v. Teleplus Enters., Inc.*, 2008 WL 2277094, at *13 (D.N.J. June 2, 2008) (internal quotation marks, alterations, and citations omitted). "A finder, however, will be performing the functions of

- 19 -

a broker-dealer, triggering registration requirements, if activities include: analyzing the financial needs of an issuer, recommending or designing financing methods, involvement in negotiations, discussion of details of securities transactions, making investment recommendations, and prior involvement in the sale of securities." *Cornhusker Energy Lexington, LLC v. Prospect St. Ventures*, 2006 WL 2620985, at *6 (D. Neb. Sept. 12, 2006); *see also Couldock & Bohan, Inc. v. Societe Generale Sec. Corp.* 93 F.Supp.2d 220, 229 (D. Conn. 2000) (holding that plaintiff was dealer rather than finder because it was "not merely matching buyers and sellers, but rather was placing itself squarely in the middle of each transaction in order to reap the profits from . . . the price difference between the buy and sell sides of the transactions, for its own account").

Although there is not an abundance of binding case law defining broker and dealer, one Fifth Circuit case is illustrative.  In *Eastside Church* the court held that the defendant was both a broker and a dealer for purposes of the Exchange Act. *Eastside Church*, 391 F.2d at 361-62.  The defendant assisted churches in all the legal work associated with a bond plan, acted as a trustee and the financial agent of the property, and directed the bond sales program, making sales throughout the country.  *Id.* at 361.  The court found the above activities "conclusively" established that the defendant was a broker. *Id.*  The court also held that the defendant was a dealer based solely on the fact that it "purchased many church bonds prior to the ones in question for its own account as a part of its regular business and sold some of them."  *Id.*

- 20 -

B

1

It is undisputed that Reynolds, Mullholand, RSMR, Dissemination, Page, and Page Properties were not registered with the SEC as brokers or dealers.  Defendants Mullholand and Dissemination do not discuss the SEC's § 78o(a)(1) claim in their response brief, and the court therefore considers the SEC's facts related to Mullholand and Dissemination to be undisputed.  *See Tutton v. Garland Indep. Sch. Dist.*, 733 F. Supp. 1113, 1117 (N.D. Tex. 1990) (Fitzwater, J.) (holding that court cannot enter "default" summary judgment based on nonmovant's failure to respond, but that it can accept movant's evidence as undisputed); Fed. R. Civ. P. 56(e)(2).  Reynolds, RSMR, and Page Properties did not respond to the SEC's motion for summary judgment, and the court therefore treats the SEC's facts related to Reynolds, RSMR, and Page Properties as undisputed.  *See Tutton*, 733 F. Supp. at 1117; Rule 56(e)(2).  Although the court is not entering a "default" summary judgment against Reynolds, Mullholand, RSMR, Dissemination, and Page Properties, it concludes that the SEC has introduced sufficient undisputed evidence to hold that they used the instrumentalities of interstate commerce in acting as unregistered[20] dealers.[21]

---

[20]Mullholand, Reynolds, Dissemination, and RSMR used the instrumentalities of interstate commerce by using brokerage accounts in New York and California from Texas to sell shares of Texas companies.  They were not registered with the SEC as brokers or dealers.

[21]Mullholand, Reynolds, Dissemination, and RSMR acted as dealers by engaging in the business of selling shares for their own accounts.  Mullholand and Reynolds, through Dissemination and RSMR, purchased or received as compensation millions of shares of the

2

Page, however, does contest whether he is a dealer. He maintains that his involvement in the transactions does not amount to what other courts have found constitutes being "*engaged in the business* of buying and selling securities for [one's] own account." 15 U.S.C. § 78c(a)(5) (emphasis added). Page cites in support cases that hold that one is only "engaged in the business" of buying and selling securities for his own account if he has been involved in regular solicitations involving large dollar amounts, which Page maintains he was not.[22]

The SEC responds with uncontested evidence showing that Page was "engaged in the business" of buying and selling securities. First, the evidence establishes that Page and Page Properties owned investment accounts at J. Alexander and Bishop Rosen. Despite Page's contentions to the contrary, a reasonable jury could only find that Page used his accounts to buy and sell the securities of multiple companies. The evidence shows that Page bought shares of both Ecogate and Media International, and Page's company, Lion Capital, received shares of Ecogate in connection with the company's work on the Ecogate offering. Shortly thereafter, Page sold these shares through his accounts at J. Alexander and Bishop Rosen.

───────────────

six companies involved in the transactions at issue in this case, and sold those shares for substantial sums.

[22]The SEC and Page only cite cases that define "engaged in the business" of a broker, not a dealer. Thus the court focuses on the regularity of participation in the actions of a dealer, *see Massachusetts Financial Services*, 411 F. Supp. at 415, rather than on activities that courts have considered when determining whether someone is engaged in the business of a broker.

Second, the evidence establishes that, through the purchase and sale of the shares of three other companies not at issue in this case—NuEnergy, Inc. ("NuEnergy"), eCarfly, Inc. ("eCarfly"), and ConnectAJet.com ("ConnectAJet")—Page regularly participated in buying and selling of securities for his own account.  Page received one million shares of NuEnergy stock directly from the company for his services promoting NuEnergy as part of a Rule 504 offering, 500,000 of which he gave to Mullholand and Reynolds for their market awareness campaign promoting NuEnergy.  Page also purchased millions of shares of both eCarfly and ConnectAJet and began immediately selling the shares to the public.  In response to the SEC's questioning about these transactions, Page asserted his Fifth Amendment rights and refused to respond.

The best indication of someone's being "engaged in the business" of a dealer is the "regularity of [his] participation" in the buying and selling of securities for his own account. *Mass. Fin. Servs.*, 411 F. Supp. at 415.  The SEC has introduced unrebutted evidence that Page regularly bought and sold securities for his own account.  Additionally, the transactions involved a substantial number of shares and money.  Page and Page Properties sold more than three million shares of Ecogate and Media International for more than $250,000.  Acting through various companies he controlled, Page bought ten million shares of both eCarfly and ConnectAJet, and received another million shares of NuEnergy, some of which he sold to the public.  Moreover, Page was not buying and selling securities as an individual investor making isolated transactions, which would disqualify him as a "dealer" under the statute.  Page not only bought and sold securities through his companies Page Properties and Lion

Holdings, but also through Testre LP and Griffdom Enterprises, Inc.

Although there are few cases describing what actions courts should look to when determining whether a person is a dealer, the evidence described above would only enable a reasonable jury to find that Page's actions constitute "engag[ing] in the business" of buying and selling securities.  In *Eastside Church* the Fifth Circuit held that the defendant was a dealer because it "purchased many church bonds prior to the ones in question for its own account as part of its regular business and sold some of them."  *Eastside Church*, 391 F.2d at 361.  Like the defendant in *Eastside Church*, Page bought and sold securities as part of his regular business, making him a dealer under 15 U.S.C. § 78c(a)(5).

3

A party violates 15 U.S.C. § 78o(a)(1) if he is an unregistered broker *or* dealer and effects transactions in, or induces or attempts to induce the purchase or sale of, any security. Because a reasonable jury could only find that defendants are unregistered dealers, the court grants the SEC's motion for summary judgment against defendants on its claim under § 15(a)(1) of the Exchange Act, 15 U.S.C. § 78o(a)(1).

V

Mullholand and Dissemination assert the affirmative defense of *res judicata*,[23] arguing

that it was necessary that any claims against them relating to CDCS be raised in *Delashmet*

*v. Custom Designed Compressor Sys., Inc.*, 2006 WL 2016080 (D.N.M. Mar. 9, 2006).  For

*res judicata* to apply to the CDCS transaction, the following test must be satisfied:

> (1) the parties must be either identical or in privity; (2) the
> judgment in the prior action [must have been] rendered by a
> court of competent jurisdiction; (3) the prior action must have
> been concluded to a final judgment on the merits; and (4) the
> same claim or cause of action [must have been] involved in both
> actions.

*United States v. Davenport*, 484 F.3d 321, 326 (5th Cir. 2007) (internal quotation marks

omitted).  The first prong of the test cannot be met.  The defendants in *Delashmet* were

CDCS and Shelby Ball ("Ball"), neither of whom is a defendant in this case.  Nor have

defendants alleged or produced evidence showing that CDCS or Ball is in privity with any

party in this case.  Therefore, the court grants summary judgment for the SEC on Mullholand

and Dissemination's affirmative defense of *res judicata*.

\*   \*   \*

For the reasons stated, the court grants the SEC's May 6, 2011 motion for summary

judgment on all liability issues and denies the cross-motion for summary judgment of

---

[23]Defendants have the burden of proving this affirmative defense at trial.  Therefore, the SEC can "meet its summary judgment obligation by pointing the court to the absence of evidence to support the . . . affirmative defense."  *TGI Friday's, Inc. v. Great Nw. Rests., Inc.*, 2010 WL 1460045, at \*1 (N.D. Tex. Apr. 13, 2010) (Fitzwater, C.J.) (citing *Celotex*, 477 U.S. at 325).

defendants Fischer and ATN and relief defendants Barham and Ballad.  The court will separately issue a decision addressing the relief to which the SEC is entitled.

**SO ORDERED.**

January 26, 2012.

SIDNEY A. FITZWATER
CHIEF JUDGE