IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SECURITIES AND EXCHANGE          §
COMMISSION,                      §
                                 §
                    Plaintiff,   §
                                 §   Civil Action No. 3:07-CV-1643-D
VS.                              §
                                 §
PHILLIP W. OFFILL, JR., et al.,  §
                                 §
                   Defendants.   §

MEMORANDUM OPINION
AND ORDER

        After granting plaintiff Securities and Exchange Commission's ("SEC's") motion for

summary judgment against all defendants[1] for liability based on violations of § 5 of the

Securities Act of 1933 ("Securities Act") and § 15(a)(1) of the Securities Exchange Act of

1934 ("Exchange Act"), *SEC v. Offill*, 2012 WL 246061, at *1 (N.D. Tex. Jan. 26, 2012)

(Fitzwater, C.J.) ("*Offill I*"), and in accordance with *Offill I* and the procedure established by

the court's February 8, 2012 order, the court now grants the SEC the following relief[2] for the

---

[1]Defendants in this case are Phillip W. Offill, Jr., David B. Stocker ("Stocker"), Curtis-Case, Inc. ("Curtis-Case"), Shane A. Mullholand ("Mullholand"), Ryan M. Reynolds, Timothy T. Page, Steven P. Fischer, RSMR Capital Group, Inc., Dissemination Services, LLC ("Dissemination"), Page Properties, LP, and ATN Enterprises, LLC, and three relief defendants Timothy B. Barham, Ballad Enterprises, Inc., and Bellatalia, LP. Final consent judgments were entered as to Stocker and Curtis-Case before the SEC moved for summary judgment.

[2]The SEC has advised the court that it is in the process of settling with Mullholand and therefore has requested that the court stay any rulings related to Mullholand and his company, Dissemination. Accordingly, the court does not address in this memorandum opinion and order what is the appropriate relief to be awarded the SEC against Mullholand

reasons explained.[3]

I

In *Offill I* the court granted the SEC's motion for summary judgment, holding that all the defendants had violated § 5 of the Securities Act, 15 U.S.C. § 77e(a) and (c), and that defendants Ryan M. Reynolds ("Reynolds"), Shane A. Mullholand ("Mullholand"), RSMR Capital Group, Inc. ("RSMR"), Dissemination Services, LLC ("Dissemination"), Timothy T. Page ("Page"), and Page Properties, LP ("Page Properties") had violated § 15(a)(1) of the Exchange Act, 15 U.S.C. § 78o(a)(1). *Offill I*, 2012 WL 246061, at *1. The court stated that it would "separately issue a decision addressing the relief to which the SEC is entitled." *Id.* at *10. In a February 8, 2012 order, the court advised the parties that it had "decided to convene a hearing at which the SEC and any parties who oppose the relief the SEC seeks can present pertinent evidence and/or argument." Feb. 8, 2012 Order. The order provided, in pertinent part, that "[a] party [could] rely on evidence and/or argument presented in the summary judgment papers without offering that evidence through additional witnesses or exhibits, and without presenting additional argument at the hearing." *Id.* Only defendant Mullholand attended the hearing. Defendants Page, Page Properties, Steven P. Fischer ("Fischer"), ATN Enterprises, LLC ("ATN"), Timothy B. Barham ("Barham"), and Ballad Enterprises, Inc. ("Ballad") did not attend. Instead, their attorneys requested that counsel for

_____

and Dissemination.

[3]The court sets out in this memorandum opinion and order its findings of fact and conclusions of law. *See* Fed. R. Civ. P. 52(a)(1).

- 2 -

the SEC read into the hearing record emails they had submitted to the SEC setting out their positions regarding the SEC's requested relief. The court has considered the evidence introduced at the hearing and the parts of the summary judgment record properly presented for review and now enters this decision regarding the remedies to which the SEC is entitled.

II

The court addresses first whether the SEC should be awarded the remedy of disgorgement.

A

"'Disgorgement wrests ill-gotten gains from the hands of a wrongdoer. It is an equitable remedy meant to prevent the wrongdoer from enriching himself by his wrongs.'" *Allstate Ins. Co. v. Receivable Fin. Co.*, 501 F.3d 398, 413 (5th Cir. 2007) (quoting *SEC v. Huffman*, 996 F.2d 800, 802 (5th Cir. 1993)). "The district court has broad discretion in fashioning the equitable remedy of a disgorgement order." *Huffman*, 996 F.2d at 803. "Because disgorgement is meant to be remedial and not punitive, it is limited to property causally related to the wrongdoing at issue." *Allstate Ins.*, 501 F.3d at 413 (internal quotation marks omitted). "Accordingly, the party seeking disgorgement must distinguish between that which has been legally and illegally obtained." *Id.* "The court's power to order disgorgement extends only to the amount with interest by which the defendant profited from his wrongdoing. Any further sum would constitute a penalty assessment." *SEC v. Blatt*, 583 F.2d 1325, 1335 (5th Cir. 1978). "In actions brought by the SEC involving a securities violation, 'disgorgement need only be a reasonable approximation of profits causally

- 3 -

connected to the violation.'" *Allstate Ins.*, 501 F.3d at 413 (quoting *SEC v. First City Fin. Corp.*, 890 F.3d 1215, 1231 (D.C. Cir. 1989)).  Once the SEC meets its burden of showing that "its disgorgement figure reasonably approximates the amount of unjust enrichment," the burden shifts to the defendant to "demonstrate that the disgorgement figure was not a reasonable approximation."  *First City Fin.*, 890 F.2d at 1232.  "'Where two or more individuals or entities collaborate or have a close relationship in engaging in the violations of the securities laws, they may be held jointly and severally liable for the disgorgement of illegally obtained proceeds.'"  *SEC v. JT Wallenbrock & Assocs.*, 440 F.3d 1109, 1117 (9th Cir. 2006) (brackets omitted) (quoting *SEC v. First Pac. Bancorp*, 142 F.3d 1186, 1191 (9th Cir. 1998)); *see also SEC v. Hughes Capital Corp.*, 124 F.3d 449, 455 (3d Cir. 1997); *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1475-76 (2d Cir. 1996).

"[T]he SEC may seek disgorgement from 'nominal' or 'relief' defendants who are not themselves accused of wrongdoing in a securities enforcement action where those persons or entities (1) have received ill-gotten funds, and (2) do not have a legitimate claim to those funds." *SEC v. DCI Telecomms., Inc.*, 122 F.Supp.2d 495, 502 (S.D.N.Y. 2000) (citing *SEC v. Cavanagh*, 155 F.3d 129, 136 (2d Cir. 1998)).

B

Of the named defendants and relief defendants, only defendants Offill[4] and Reynolds

---

[4]Offill did not respond to the SEC's motion for summary judgment or present additional evidence at the hearing.  Therefore, he has not met his burden of showing that the SEC's disgorgement values are not reasonable approximations.

and relief defendant Bellatalia, LP. ("Bellatalia") do not concede the disgorgement values as calculated by the SEC.  Nevertheless, the SEC has demonstrated that its disgorgement calculations regarding all defendants and relief defendants are reasonable approximations of the profits connected to the violation.  Reynolds and Bellatalia presented evidence and arguments contesting the SEC's disgorgement calculations,[5] but they did not meet their burden of showing that the SEC's disgorgement calculations are not reasonable approximations of their profits causally connected to the violation.

The SEC requests that the court also award prejudgment interest on the disgorgement award.  "Courts have recognized that an assessment of prejudgment interest, like the disgorgement remedy, is intended to deprive wrongdoers of profits they illegally obtained by violating the securities laws."  *SEC v. Sargent*, 329 F.3d 34, 40 (1st Cir. 2003) (internal quotations and citations omitted).  The court concludes that it should award prejudgment interest, calculated according to the Internal Revenue Service ("IRS") underpayment rate. *See First Jersey*, 101 F.3d at 1476 (approving application of IRS underpayment rate for calculating prejudgment interest on amounts disgorged as a result of securities violations).

---

[5]Although Reynolds and Bellatalia did not respond to the SEC's motion for summary judgment, they did respond to the court's February 8, 2012 hearing order.  Reynolds and Bellatalia adopted the arguments of other defendants set out in their responses to the SEC's motion for summary judgment.  To the extent the arguments and evidence of these other defendants are applicable to Reynolds and Bellatalia, they are not persuasive.  For example, Reynolds and Bellatalia argue that the Custom Design Compressor System transaction should not be included in the disgorgement amount due to *res judicata*.  The court held in *Offill I*, however, that *res judicata* did not apply to that transaction.  *See Offill I*, 2012 WL 246061, at *9.

Finally, the SEC requests that certain parties be held jointly and severally liable for the disgorgement awards if the parties collaborated when engaging in the established violations. Because many defendants are individuals who used a defendant corporation to engage in a transaction at issue, the court finds that these defendants should be held jointly and severally liable for the disgorgement.

Accordingly, the court holds that defendants and relief defendants are jointly and severally liable for the following amounts of disgorgement and prejudgment interest: Page and Page Properties, $288,223.08 disgorgement and $141,092.36 prejudgment interest; Fischer and ATN, $5,658,859.81 disgorgement and $2,649,978.23 prejudgment interest; Reynolds and RSMR, $6,259,884.82 disgorgement and $3,082,613.89 prejudgment interest; Offill, $12,500.00 disgorgement and $6,233.84 prejudgment interest; relief defendants Barham and Ballad, $865,898 disgorgement; and relief defendant Bellatalia, $3,090,550 disgorgement. The court also grants the SEC's request to assess post-judgment interest pursuant to 28 U.S.C. § 1961. The court will include an award of post-judgment interest in the final judgment.

III

The SEC also seeks an award of third-tier civil penalties under § 20(d) of the Securities Act.

A

"Civil penalties are designed to punish the individual violator and deter future violations of the securities laws." *SEC v. Opulentica, LLC*, 479 F.Supp.2d 319, 331

(S.D.N.Y. 2007). "Without civil penalties, the only financial risk to violators is the forfeiture of their ill-gotten gains." *SEC v. Koenig*, 532 F.Supp.2d 987, 995 (N.D. Ill. 2007). The Securities Act provides three tiers of penalties. *See* 15 U.S.C. § 77t(d); 17 C.F.R. § 201.1003 (2007).

Neither § 20(d) of the Securities Act nor § 21(d) of the Exchange Act provides any guidance as to the proper amount of the civil penalty. A number of courts, however, have relied on the same principles when determining whether to award civil penalties. These factors are:

> (1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition.

*Opulentica*, 479 F.Supp.2d at 331 (citing *SEC v. Coates*, 137 F.Supp.2d 413, 428-29 (S.D.N.Y. 2001) (listing factors)); *SEC v. Haligiannis*, 470 F.Supp.2d 373, 386 (S.D.N.Y. 2007) (relying on these five factors); *SEC v. Lybrand*, 281 F.Supp.2d 726, 730 (S.D.N.Y. 2003), *aff'd sub nom. SEC v. Kern*, 425 F.3d 143 (2d Cir. 2005). Other courts have considered such additional factors as the cooperation of the defendant with law enforcement authorities and the adequacy of other criminal or civil sanctions to punish the defendant. *See SEC v. Lewis*, 492 F.Supp.2d 1173, 1174 (D.S.D. 2007); *SEC v. Church Extension of the Church of God, Inc.*, 429 F.Supp.2d 1045, 1050-51 (S.D. Ind. 2005). "While these factors are helpful in characterizing a particular defendant's actions, the civil penalty framework is

of a discretionary nature and each case has its own particular facts and circumstances which determine the appropriate penalty to be imposed." *Opulentica*, 479 F.Supp.2d at 331 (internal quotation marks omitted).

The SEC requests third-tier penalties in the sum of $120,000 per offering penalty. All of the defendants dispute what tier civil penalties are appropriate.

B

As to all defendants except Offill, the court need not decide whether to award second-tier or third-tier penalties. This is so because the sum that the SEC seeks—$120,000 per offering penalty—falls factually within the range of available first-tier penalties as to these defendants. First-tier penalties "shall not exceed the greater of (i) $5,000 for a natural person or $50,000 for any other person, or (ii) the gross amount of pecuniary gain to such defendant as a result of the violation."[6] 15 U.S.C. § 77t(d)(2)(A). All defendants except Offill realized gross pecuniary gains that exceeded $120,000, thus subjecting themselves to first-tier awards of $120,000 per offering penalty.

Because the court has already found that these defendants are liable for violations of the Securities Act, *see Offill I*, 2012 WL 246061, at *10, it is beyond dispute that at least first-tier penalties are appropriate. *See* 15 U.S.C. § 77t(d). Having considered the relevant factors, the court finds that a penalty of $120,000 per defendant is appropriate. In

---

[6]The stated values do not represent the actual maximum penalties that are adjusted for inflation. *See* 17 C.F.R. § 201.1003. The adjustments, however, do not affect the applicable penalties in this case.

determining this penalty, the court notes that defendants' violations involved multiple transactions in which millions of unregistered shares were sold resulting in millions of dollars of profit to them.  Additionally, defendants' violations were committed, if not intentionally, at least with reckless disregard for the legality of the transactions.

C

The court finds that a second-tier penalty should be awarded against Offill.  Offill's role in the violations clearly involved a deliberate disregard of the regulatory requirement.  *See* 15 U.S.C. § 77t(d)(2)(B).  Offill created entities to serve as the initial investor in five of the offerings and knowingly transferred the unregistered shares received in the offerings to other defendants for $2,500 per offering.  Although Offill only profited $12,500 from violations at issue, his intentional violations of the Securities Act were particularly egregious because, *inter alia*, he was an attorney at law and was formerly an SEC attorney.  The court therefore imposes a second-tier penalty of $120,000 against Offill.

IV

The SEC also requests a permanent injunction be entered against all defendants.

A

Section 20(b) of the Securities Act "authorize[s] the [SEC] to seek and direct[s] the courts to enter permanent restraining orders upon a 'proper showing' that the defendant 'is engaged or is about to engage' in violations of the securities laws."  *SEC v. Zale Corp.*, 650 F.2d 718, 720 (5th Cir. Unit A July 1981).  "The SEC is entitled to injunctive relief when it establishes (1) a prima facie case of previous violations of federal securities laws, and (2) a

- 9 -

reasonable likelihood that the wrong will be repeated." *SEC v. Calvo*, 378 F.3d 1211, 1216 (11th Cir. 2004) (citations omitted).  Courts analyze a number of factors to determine whether past violations of the securities laws constitutes a reasonable likelihood of future transgressions, such as the

> egregiousness of the defendant's actions, the isolated or recurrent nature of the infraction, the degree of scienter involved, the sincerity of the defendant's assurances against future violations, the defendant's recognition of the wrongful nature of the conduct, and the likelihood that the defendant's occupation will present opportunities for future violations.

*Id.*  "While scienter is an important factor in this analysis, it is not a prerequisite to injunctive relief."  *Id.* (citations omitted).

B

The SEC seeks a permanent injunction against all defendants to prevent future violations of the securities laws.  Page and Page Properties concede that an injunction is appropriate, but Fischer, ATN, Reynolds, RSMR, and Offill do not.  The court has already found that Fischer, ATN, Reynolds, RSMR, and Offill violated the securities laws. *See Offill I*, 2012 WL 246061, at *10.  Accordingly, the court need only decide whether there is a reasonable likelihood of future violations.

Fischer, ATN, Reynolds, and RSMR argue that the SEC has not met its burden of showing a likelihood of future violations.  Fischer also asserts that he has not participated in any stock offerings since 2007.  But this fact alone does not outweigh the SEC's showing that there is a reasonable likelihood of future securities laws violations.  And Fischer still

- 10 -

trades stock for his own account.  Nor is the court persuaded not to impose a permanent injunction after considering Fischer's apology and his assurance that he will not participate in "securities activities" anymore.  Fischer App. 60-62.  The court therefore finds that because Fischer, ATN, Reynolds, RSMR, and Offill each took part in a scheme in which millions of shares of unregistered securities were sold for millions of dollars,[7] they sold unregistered securities (at least with reckless disregard for the registration requirements, if not intentionally), and such a scheme could easily be repeated, it should enter an injunction prohibiting all defendants from violating the securities laws.

V

The SEC also seeks a penny stock bar against all defendants.

A

Section 20(g) of the Securities Act authorizes the court to "prohibit [a] person from participating in an offering of penny stock, conditionally or unconditionally, and permanently or for such period of time as the court shall determine" if that person is "participating in, or, at the time of the alleged misconduct, who was participating in, an offering of penny stock." 15 U.S.C. § 77t(g)(1).  Courts often consider the following factors when determining the appropriateness of a penny stock bar: "(1) the 'egregiousness' of the underlying securities law violation; (2) the defendant's repeat offender status; (3) the defendant's 'role' or position

_____

[7]Although Offill only profited $12,500 from the transactions at issue, because he is a former SEC attorney who knew that his actions were illegal, the court finds that a permanent injunction is appropriate.

- 11 -

when he engaged in the fraud; (4) the defendant's degree of scienter; (5) the defendant's economic stake in the violation; and (6) the likelihood that misconduct will recur." *SEC v. Elliot,* 2011 WL 3586454, at *14 (S.D.N.Y. Aug. 11, 2011) (citations omitted).

B

The same defendants who did not concede the appropriateness of an injunction—Fischer, ATN, Reynolds, RSMR, and Offill—do not concede that a penny stock bar is warranted. Fischer, ATN, Reynolds, and RSMR argue that the SEC has failed to make a sufficient showing on the above factors. The court finds, however, that a penny stock bar should be imposed for essentially the same reasons that support entry of an injunction: defendants sold millions of unregistered shares of penny stocks, and, in doing so, made significant amounts of money, they did so at least with reckless disregard for the registration requirements, if not intentionally, and they could easily repeat this conduct.

Under § 20(g) of the Securities Act, the court can craft a prohibition that is conditional or unconditional, and permanent or temporary. As to all defendants except Offill, the court imposes an unconditional penny stock bar of seven years from the date the judgment is filed. Having assessed the relevant factors, the court finds that a prohibition of this duration is reasonably likely to protect the investing public from future violations of the securities laws with respect to penny stocks without over-punishing these defendants for their conduct.

As to Offill, the court unconditionally and permanently bars him from participating in an offering of penny stock. As a former SEC attorney who knew that his actions were illegal, his conduct is not only particularly egregious, but his knowledge and experience as

- 12 -

a securities regulator make him especially dangerous to the investing public.

\*   \*   \*

The court grants the SEC the relief specified in this memorandum opinion and order against Offill, Reynolds, Page, Fischer, RSMR, Page Properties, ATN, Barham, Ballad, and Bellatalia.   The SEC is directed to submit promptly a form of judgment for the court's consideration.

**SO ORDERED.**

April 5, 2012.

SIDNEY A. FITZWATER
CHIEF JUDGE

- 13 -